UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANOVA APPLIED ELECTRONICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> PERCH ACQUISITION CO 1, LLC, et al., <br><br> Defendants. | CASE NO. C23-0843JLR <br><br> ORDER |

## I.  INTRODUCTION

Before the court is Plaintiff Anova Applied Electronics, Inc.'s ("Anova") motion for an extension of time to serve the International Defendants,[1] for alternative service of

---

[1] The International Defendants are Dmytro Makarov; Iryna Voloshyna; Maksym Mosinian, doing business on Amazon.com as Garnease ("Garnease"); Hong Kong Xing Hua Technology Co., Limited, doing business on Amazon.com as Upesitom ("Upesitom"); Dongguanshi yingsheng keji youxiangongsi, doing business on Amazon.com as Caukins ("Caukins"); and Jinantaizhuofurundianzishangmaoyouxiangongsi, doing business on Amazon.com as Lekoza ("Lekoza").  (*See generally* Compl. (Dkt. # 1).)

ORDER - 1

process, and to extend the deadlines set forth in the court's initial scheduling order. (Mot. (Dkt. # 29).) None of the International Defendants have been served and none have appeared in this action. (*See generally* Dkt.) Although the Domestic Defendants[2] have either been served or waived service, neither has appeared in this action. (*See generally id.*; Service Status Report (Dkt. # 25).) The court has considered Anova's motion, all materials submitted in support of the motion, the relevant portions of the record, and the applicable law.[3] Being fully advised,[4] the court GRANTS in part and DENIES in part Anova's motion.

## II.  BACKGROUND[5]

Anova asserts that it is "a global leader in kitchen appliances and accessories" and that its Precision Cooker sous vide cooking device "has become the best-selling sous vide device on the market today." (Compl. ¶ 16.) Anova holds a patent and trademarks associated with its Precision Cooker and Precision brand. (*Id.* ¶¶ 17-19; *see id.*, Exs. 1-3.) This case arises from alleged infringements of Anova's patent and trademarks by the International and Domestic Defendants (collectively, "Defendants"). (*See generally*

---

[2] The Domestic Defendants are Perch Acquisition Co 1, LLC d/b/a "Sousvide Art" ("Sousvide Art") and Wedge and Wagon, LLC ("Wedge"). (*See generally* Compl.)

[3] Although the motion is noted for September 15, 2023 (*see* Dkt.), the court exercises its discretion under Federal Rule of Civil Procedure 1 to decide the motion before the noting date.

[4] No one has requested oral argument (*see* Mot.; Dkt.), and the court has determined that oral argument would not be helpful to its disposition of the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[5] The court detailed the factual background of this case in its August 11, 2023 order and does not repeat that background here. (*See* 8/11/23 Order (Dkt. # 28) at 2-4.)

Compl.) According to Anova, Defendants infringed its patent and trademarks by manufacturing, importing, offering for sale, and selling "certain 'Sousvide Art Precision Cooker' products" in the United States. (*Id.* at 2.) Below, the court discusses the efforts Anova has made so far to identify and serve or obtain waivers of service from the International Defendants.

1. <u>Mr. Makarov and Ms. Voloshyna</u>

Anova represents that it has sent copies of its renewed motion for a preliminary injunction, complaint, and service waivers to Mr. Makarov and Ms. Voloshyna using email addresses included in relevant United States Patent and Trademark Office ("USPTO") records. (*See* 6/28/23 Billick Decl. (Dkt. # 22) ¶¶ 4-5.) Mr. Makarov and Ms. Voloshyna did not respond to the email Anova sent to them. (*See id.*; Service Status Report ¶ 6.)

2. <u>Lekoza and Garnease</u>

Anova also represents that it sent copies of its renewed motion for a preliminary injunction, complaint, and service waivers to the email addresses associated with email messages Lekoza and Garnease sent in response to Anova's Amazon takedown requests. (*See* 6/28/23 Billick Decl. ¶¶ 3, 5; Service Status Report ¶¶ 4-5.) Anova does not state whether Lekoza and Garnease responded to the emails Anova sent them. (*See* 6/28/23 Billick Decl. ¶¶ 3, 5; Service Status Report ¶¶ 4-5.) Additionally, Anova represents that it communicated with U.S. trademark lawyers who initially identified themselves as representing Lekoza and Garnease and/or were listed as counsel-of-record, according to USPTO records, for the LEKOZA and GARNEASE trademarks. (9/5/23 Billick Decl.

(Dkt. #30) ¶¶ 7-9.) When Anova asked these lawyers to waive service of process for Lekoza and Garnease, the lawyers stated that they no longer represent those Defendants or assumed that representation has been terminated due to a lack of contact with the Defendants. (*Id.*) They directed Anova to contact Lekoza and Garnease directly. (*Id.*)

### 3. Upesitom and Caukins

Anova represents that it emailed the U.S. trademark lawyers listed as counsel-of-record in USPTO records for the UPESITOM trademark and on the CAUKINS trademark application materials and asked them whether they would accept service on behalf of Upesitom and Caukins. (*Id.* ¶¶ 10-11.) However, Anova states that it has not received a response from these attorneys.[6] (*Id.*)

## III.   ANALYSIS

Anova now asks the court for permission to serve the International Defendants using the email addresses it has identified as being associated with either the International Defendants themselves or with their purported U.S. trademark counsel. (*See generally* Mot. at 5-8, 12-13 (seeking to serve Mr. Makarov, Ms. Voloshyna, Garnease, and Lekoza using their email addresses and Lekoza, Upesitom, and Caukins using the email addresses of their purported U.S. trademark counsel).) Anova also asks the court to extend the

//

---

[6] Anova asserts that the U.S. trademark lawyer listed as counsel-of-record on the initial CAUKINS trademark application refused to accept service and ultimately withdrew as trademark counsel for Caukins. (9/5/23 Billick Decl. ¶¶ 10.) A new trademark attorney was subsequently added to the CAUKINS trademark application materials. (*Id.*) Anova has not yet received a response from the new trademark attorney. (*Id.*)

deadline to serve the International Defendants and the deadlines set forth in the court's initial scheduling order. (*Id.* at 9, 13-14.)

The court begins by addressing Anova's request for alternative service of process before turning to Anova's requests for extensions of the service deadline and the deadlines set forth in the court's initial scheduling order.

**A.     Alternative Service of Process**

The court sets forth the relevant legal standard before considering whether alternative service is warranted in this case.

    **1.     Legal Standard**

Federal Rule of Civil Procedure 4(h) governs service of process on foreign businesses. Fed. R. Civ. P. 4(h). Rule 4(h)(2) authorizes service of process on a foreign corporation "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2). Rules 4(f)(1) and 4(f)(2) provide specific methods of serving process on individuals in foreign countries. *See* Fed. R. Civ. P. 4(f)(1)-(2). Rule 4(f)(3) allows international service by a method not listed in Rule 4(f)(1) or (2) if the method is "not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). As long as the method of service is "court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-15 (9th Cir. 2002); *id.* at 1015 n.4 ("A federal court would be prohibited from issuing a Rule 4(f)(3) order in contravention of an

international agreement, including the Hague Convention, referenced in Rule 4(f)(1).")."Service under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief'"; rather, "[i]t is merely one means among several which enables service of process on an international defendant." *Id.* at 1015. It is within a court's "sound discretion" to determine whether "the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)." *Id.* at 1016.

"Even if facially permitted by Rule 4(f)(3)," however, "a method of service of process must also comport with constitutional notions of due process." *Id.* at 1016. "[T]rial courts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email." *Id.* at 1016. The "method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 1016-17 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

  2. Analysis

  Anova argues that service by email is appropriate because (1) it has been unsuccessful in its attempts to obtain waivers of service from the International Defendants and their purported U.S. trademark counsel and (2) service under the Hague Convention "is a lengthy process." (Mot. at 11-12.) Anova asserts that serving the International Defendants using the email addresses it has identified as being associated with either the International Defendants themselves or with their purported U.S.

1  trademark counsel is permissible under Rule 4(f)(3) and comports with due process

2  requirements.  (*Id.* at 9-13.)

3  Although service under Rule 4(f)(3) is available "without first attempting service

4  by other means," the moving party must show "that the facts and circumstances of the

5  present case necessitate[] . . . alternative means of service."  *Rio Properties*, 284 F.3d at

6  1016.  "That implies that a plaintiff [must] make some demonstration that other methods

7  of service are impracticable or unavailable."  *In re Cathode Ray Tube Antitrust Litig.*, No.

8  07-CV-5944-JST, 2020 WL 13303554, at *2 (N.D. Cal. Oct. 26, 2020).  Courts consider

9  a variety of factors when evaluating whether alternative service is warranted, including

10 (1) "the plaintiff's effort to locate the defendant's address and whether the address could

11 not be found," (2) whether the defendant is purposefully evading service of process, and

12 (3) "whether service under the Hague Convention was attempted or otherwise feasible."

13 *See, e.g.*, *Keck v. Alibaba.com, Inc.*, 330 F.R.D. 255, 258 (N.D. Cal. 2018) (denying

14 motion for alternative service where plaintiff "ha[d] not provided evidence that the

15 locations of the Additional Defendants [were] unknowable"); *Amazon.com, Inc. v. Tian*,

16 No. C21-0159TL, 2022 WL 486267, at *4 (W.D. Wash. Feb. 17, 2022) (denying motion

17 for alternative service where no Hague Convention service had been attempted and no

18 issues of urgency had been identified); *Rio Properties*, 284 F.3d at 1012-13, 1016

19 (authorizing alternative service where plaintiff made multiple good faith yet unsuccessful

20 efforts to serve defendant and established that defendant was "striving to evade service of

21 process").  For the reasons discussed below, the court concludes that Anova has failed to

22 //

establish, at this stage, that "the particularities and necessities of [this] case require alternate service of process under Rule 4(f)(3)." *Rio Properties*, 284 F.3d at 1016.

First, Anova has obtained physical addresses for the International Defendants, through either the "USPTO's public Trademark States & Document Retrieval ('TSDR') system" or the International Defendants' Amazon Seller Profiles. (*See generally* Compl. at 4-6.) Anova has not, however, attempted to verify the accuracy of these addresses nor put forth any relevant facts that would put the validity of those addresses in question. (*See generally* Mot.; *see id.* at 12 (asserting, without support, that "it is unclear if the addresses of the International Defendants are legitimate");[7] 9/5/23 Billick Decl.) Indeed, Anova has not made any effort to show that the International Defendants' addresses "are incorrect or otherwise inadequate for purposes of serving" them. *Tian*, 2022 WL 486267, at *4.

Second, Anova does not put forth evidence that the International Defendants are purposefully evading service. (*See generally* Mot.) Rather, Anova merely states that some of the International Defendants responded to Anova's Amazon takedown requests but did not respond to its emails containing its complaint and a waiver of service. (*See* Service Status Report ¶¶ 4-6; 6/28/23 Billick Decl. ¶¶ 3-5; Mot. at 11.) It also states that Lekoza, Upesitom, and Caukins's purported U.S. trademark counsel either have informed

---

[7] *See, e.g., Astral IP Enter. Ltd. v. Apero Techs. Grp.*, No. 23-CV-02853-JSC, 2023 WL 5498730, at *3 (N.D. Cal. Aug. 23, 2023) ("Plaintiff's speculation the physical address is likely false and the email addresses are a more reliable mechanism for providing service is unpersuasive as it is unsupported by any evidence the physical address in this case is false . . . .").

Anova that they that they no longer represent such Defendants or have not responded to Anova's emails at all.[8] (*See* 9/5/23 Billick Decl. ¶¶ 7-11; Mot. at 6-8, 11.) Accordingly, absent additional evidence, such as evidence of Anova's attempts to reach the International Defendants and of the International Defendants' evasive actions, the court cannot conclude that the International Defendants are evading service. *See, e.g.*, *Kowalski v. Anova Food, LLC*, No. CIV. 11-00795 HG-RLP, 2012 WL 3308886, at *2 (D. Haw. Aug. 10, 2012) (rejecting alternative service request where plaintiff did not present facts to suggest defendant was evading service).

Finally, Anova does not state that it has submitted a request to serve the International Defendants under the Hague Convention. (*See* Mot. at 12 (stating only that Anova has "begun the process to serve all International Defendants via the Hague Protocol"); Service Status Report. ¶¶ 7-8.) Anova does not make any persuasive arguments as to why service under the Hague Convention is not feasible or would otherwise be unwarranted. (Mot. at 12.) For example, as noted above, Anova has not put forth evidence sufficient to question the validity of the International Defendants' addresses. (*See supra*.) Additionally, although Anova argues that service under the Hague Convention is a "lengthy process" (Mot. at 12), it does not cite to any issues of urgency or any other factors that might weigh against effecting service under the Hague Convention. *See* Fed. R. Civ. P. 4(f) advisory committee's note to 1993 amendment

---

[8] Upesitom and Caukins's purported U.S. trademark counsel—i.e., the counsel currently associated with Upesitom trademark and Caukins's trademark application, according to USPTO records—have not responded to Anova's emails. (*See* 9/5/23 Billick Decl. ¶¶ 10-11.) Thus, it is unclear whether they actually maintain an ongoing relationship with such Defendants.

(noting urgency and delay or refusal by the Central Authority of the receiving country as reasons that might warrant alternative service); *see, e.g.*, *Kowalski*, 2012 WL 3308886, at *3 (denying motion for alternative service where plaintiff did not face a threat of immediate, irreparable harm absent preliminary relief and did not establish that service under the Hague Convention would unreasonably delay the action). "[T]he desire for expedience and efficiency alone is not sufficient to justify alternative service." *Tian*, 2022 WL 486267, at *2; *Keck*, 330 F.R.D. at 259 (concluding that plaintiff's request to serve defendants by email because it will be faster than the Hague Convention was not, by itself, a sufficient justification for alternative service).

Accordingly, based on the presented facts, the court finds that Anova has failed to show that alternative service on the International Defendants through email is warranted at this time. This does not mean that Anova must exhaust other means before resorting to Rule 4(f)(3). *Rio Properties*, 284 F.3d at 1016. But, Anova needs "to demonstrate that the facts and circumstances of the present case necessitate[] the district court's intervention" under Rule 4(f)(3). *Id.* Because Anova has failed to do so,[9] the court DENIES Anova's motion for alternative service of process without prejudice.

## B. Anova's Request for an Extension of Time to Complete Service

Anova states that it needs additional time to serve the International Defendants and asks the court to extend Federal Rule of Civil Procedure 4(m)'s "120-day time []period for service" by 14 days. (Mot. at 4, 9 ("Alternatively, Anova requests an additional 60

---

[9] In light of this conclusion, the court does not address whether service by email (1) is prohibited by an international agreement and (2) comports with due process.

days to effect service on the International Defendants via the [Hague Convention].").)
However, Rule 4(m) provides for a 90-day service limit, rather than a 120-day limit, and
"does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1)." Fed.
R. Civ. P. 4(m). Because the International Defendants do not appear to reside in the
United States (*see generally* Compl. at 5-6), Rule 4(m)'s 90-day service limit does not
apply to those Defendants. Accordingly, the court DENIES as moot Anova's request for
an extension of time to serve the International Defendants. However, the court ORDERS
Anova to file a report regarding the status of service of process on the International
Defendants every 30 days. The court warns Anova that the failure to make diligent
efforts to serve the International Defendants may result in the dismissal of the
International Defendants for failure to prosecute. *See* Fed. R. Civ. P. 41(b).

**C.    Anova's Request to Extend the Deadlines Set Forth in the Court's Initial Scheduling Order**

Anova asks the court to extend the deadlines set forth in the court's initial scheduling order (6/28/23 Order (Dkt. # 19)) by 30 days because it is engaged in settlement discussions with Sousvide Art. (Mot. at 13-14.) The court finds that good cause exists to extend the deadlines outlined in the court's initial scheduling order by 30 days. Fed. R. Civ. P. 6(b), 16(b); Local Rules W.D. Wash. LCR 16(a). Accordingly, the court GRANTS Anova's request and resets the deadlines as follows:

Deadline for FRCP 26(f) Conference: **9/27/2023**

Initial Disclosures Pursuant to FRCP 26(a)(1): **10/5/2023**

Combined Joint Status Report and Discovery Plan as Required by FRCP 26(f) and Local Civil Rule 26(f): **10/11/2023**

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Anova's motion for an extension of time to serve the International Defendants, for alternative service of process, and to extend the deadlines set forth in the court's initial scheduling order (Dkt. # 29).  Specifically, the court ORDERS as follows:

1. Anova's request to extend the deadlines set forth in the court's initial scheduling order by 30 days is GRANTED;

2. Anova's request for an extension of time to serve the International Defendants is DENIED as moot.  The court ORDERS Anova to file a report regarding the status of service of process on the International Defendants within 30 days of the filing date of this order and every 30 days thereafter; and

3. Anova's request to serve the International Defendants via email is DENIED without prejudice.  Anova may renew its motion with evidence (1) establishing that the facts and circumstances of this case require alternate service of process under Rule 4(f)(3) and (2) demonstrating why service using either the email addresses associated with the International Defendants themselves or their purported U.S. trademark counsel is a reliable method to provide the International Defendants with notice of this action.

Dated this 13th day of September, 2023.

JAMES L. ROBART
United States District Judge